My name is Pat Matassarin. I'm here having represented my husband, which everyone knows, in a lawsuit filed in Kamala County, Texas, subsequently removed to the Western District of Texas in San Antonio. The issues in this case are pretty cut and dry. The law is pretty clear on both. The first issue is whether the removal of this case from Kamala County, Texas, to the Western District was compliant with the removal statutes, which 28 USC 1446. It's clear that a federal judge, a federal court, has to have jurisdiction in order to consider a lawsuit. There's two ways that a court can get that jurisdiction. One is federal question. The other is diversity jurisdiction. It's my contention that straight up diversity is controlled more readily by 1332. That's an instance where an individual anticipates a diversity situation and initiates a lawsuit in federal court under 1332. That's not what happened in this instance. In this instance, George Matassarin asserted his right to proceed in Kamala County, Texas with the lawsuit that he filed under the Texas long-arm statute. I see today that there's two cases before you that have some long-arm aspects to them. My contention is that when a case is improvidently removed from a state court that already has that it imposes a wrongful burden on the plaintiff. Clearly, the plaintiff has the right to select the forum. That's established by the Caterpillar case. The U.S. Supreme Court has said, you know, a plaintiff has the right to choose the forum. He chose a state court. When his case is removed to federal court, then the federal court's jurisdiction is imposed on the plaintiff. It's not something he selected. What the obvious issue that everyone thinks when I say this is, well, but a federal court has, Congress has given a federal court the right to consider a matter that is a diversity matter. I'm contending, though, that it has to be in compliance with the legislated removal requirements. Those requirements operate almost like a statute of limitations. They're very specific. Here's what you must do. You must file the removal petition. You must attach to it a copy of all process served on the case. Since Getty Oil, the Getty Oil case, which is a very seminal case, not only in the Fifth Circuit, but nationally, that was decided in 1988, you must include written consents from each removing defendant. And it doesn't matter whether they are an individual who owns a company and both the individual and the company have been sued, the consistent case law in the Fifth Circuit has been, if you don't get a separate written consent signed by each defendant, the removal's improper. Now, you have 30 days from the last served defendant, now, after the Clarification Act, to gather up this information, put it together, and seek the removal. Some courts in other circuits have found that, well, if you don't get the process papers included for each defendant, or every defendant that's removing, that's not really a serious enough defect to deny the continued jurisdiction, the removal jurisdiction. I contend that it is, and here's why. The statute reads that you need to include the process documents which indicate that there's been proper service on the defendants. Well, the operative word in that is proper. And a defendant who chooses maybe not to include a document, as in this case, Dennis Grosner, as an individual, had his process documents, the SALC did not. It goes together with the reasoning that the Fifth Circuit has had for you want to be able to bind these defendants to the federal court's jurisdiction. Because if they're not bound properly, if they haven't consented, maybe the process wasn't proper. They go ahead, they go into federal court, maybe they don't like the judge they get, maybe they don't like the result that they get. And they can come back then and say, oh, well, gee, I'm a New Mexico corporation or company, and the person who was supposed to sign for me, or the person who was supposed to have been served on my behalf was not, therefore I really wasn't properly served. Now, these requirements for removal are very specific. And the language used mentions that these two particular things include the process and include a written . . . I mean, and that each of the defendants must consent. Don't you have another argument that you need to spend some time on? Do you have another argument besides this one that you need to spend some time on in this case? On the personal jurisdiction, yes. Under the long-arm statute. Would you like for me to move on to that one? All right. I think that the case law that I've cited in my brief, both in the initial brief and in my reply brief, clearly demonstrate that the Texas long-arm statute, the language of the statute, and the statute as it has been applied in the state of Texas and in courts here in the Fifth Circuit, is constitutional. I mean, it's been said that it extends to the length of the Constitution within the due process requirements. And it simply says, and the Supreme Court case that I cited in my brief along with the one that was just cited by Mr. Wigand on Monday, those cases do not eliminate a state's prerogative under a long-arm statute to protect individual state citizens from malfeasance or fraud committed by out-of-state operators. It's clear in the Fifth Circuit, it's been clear in the state of Texas for a long time, that there must be minimum contacts, there must be purposeful availment, it can't be inadvertent or unintended, and that the defendant has to make some sort of effort to target the society and economy of a given sovereign. And by targeting the society, they mean an individual. And one particular act of purposeful availment, particularly when there is an allegation of fraud, will suffice under the Texas long-arm statute. And we have cited multiple instances where the defendants came into the state, purposely targeted Mr. Matassaran in the state of Texas, in Kamal County, sent him a contract, an offer to buy a piece of real estate in New Mexico. That offer was sent to Texas. It was accepted by Mr. Matassaran in Kamal County, Texas. It required that he perform within a certain period of time. He had to make an application for a loan within three days. He needed to be able to qualify for the loan within a short period of time. All of that occurred in Texas. The money that was put down on the property, which was 25%, on a property that was sold for $175,000, quite a bit of cash, and he had to be able to qualify for the loan. Well, his job is in the state of Texas. He is continuing to work to this day. So all of what was necessary to compile the consideration necessary to close on this particular transaction occurred in Texas. On top of that, the closing documents were sent to him in the state of Texas by courier, received at his home in Kamal County, Texas, and he went to a Fidelity National Title Company office in Texas to accomplish his closing of this particular property. The allegations in the state petition were sufficient under Texas law. It's clear from Mr. Wigand's response, from the defendant's response, that they know exactly what the complaint is. There was some initial complaint that the state, the Texas state court pleading, consisting of 10 pages, did not comply with federal pleading requirements. There was a, you know, some discussion about a motion to dismiss for failure to register a claim under federal pleading standards. Well, it's clear in Texas that notice pleading is sufficient. If you end up with a Texas, you know, involuntarily, a Texas pleading in federal court, the federal pleading standards obviously cannot be imposed because the plaintiff didn't intend to be in federal court. Now, ultimately, that particular part of it wasn't specifically addressed by the court, but I think that the court may have been influenced somewhat by that. Well, he didn't plead with specificity. Mr. Matassian made an allegation that specific representations of fraud were made not only by the defendants in this case, but also by their counsel in the state of Texas. This was all sent to Texas. And the cases that have addressed this issue generally focus on the, given the type of case it is. I mean, again, it can be one contact. But most courts now try to look at the case as a whole. What happened in this particular instance? And clearly, undeniably, multiple specific contacts were made by the defendants into the state of Texas to induce Mr. Matassian to enter into a contract which excluded a portion of property which would have been very valuable to him. On top of that, and I want to emphasize this, too, because I think it's important, that during the process of this, the New Mexico counsel specifically represented, again, a letter sent to Kamal County, Texas, that, well, if you're going to continue to complain about this, you need to understand that under New Mexico law, once this merger happens, then you're stuck with something. You know, you don't really get to challenge it later. That's not the case in Texas law. All the more reason for the there would be trouble. You're not going to get out of the lawsuit. There's going to be an assertion by the defendants that you need to perform under this contract, because we're not going to let you out of it. Mr. Matassian, he's a man who will be 71 in November, looking to buy some property in a vacation area. He doesn't want to be intimidated and coerced. Okay, well, this is a lawyer telling us this must be okay. I'm a lawyer, and I understand that, because I would not tell someone something that was false. Why? Because I can be sanctioned for it where I'm licensed. But the question then becomes, if they're going to intimidate that, well, we're not going to let you out of this. We're going to pursue specific performance, where would that be? Would they file a lawsuit in New Mexico? Mr. Matassian had never been in New Mexico in connection with this transaction. So, if they were going to have to pursue something, they never indicated where, but he resides in Texas, works in Texas. I would assume that they would sue him in Texas for a specific performance. You have to remember that if you qualify for these loans, under the terms of the contract, you generally are required to go forward and close on the transaction. And that's why we think the court erred in the removal procedure. The case should have been remanded immediately, and the court's analysis for personal jurisdiction under long arm was incorrect as well. Thank you, Mr. Matassian. You have some time on rebuttal. Your Honor. Mr. Russell. May it please the Court. My name is Mark Wiegand. I represent the defendants, Dennis Grovner, who is a citizen of Colorado and a part-time resident of New Mexico, and defendant DeSeo LLC, which is a New Mexico limited liability company. I'd like to direct my argument on three issues. First, the defendants do not have minimum contacts with Texas. Second, the defendants have not committed a tort in Texas. And third, the plaintiffs have not satisfied their burden of proof as to minimum contacts or a tort. As to the minimum contacts specific personal jurisdiction inquiry, the court has given us a three-part test in Seifert v. Helicopter Saturneros, and that case was recently reaffirmed by the courts in last month's decision in Moncton v. Ritter v. Butterfield Bank. And I'll come back to the Moncton case in a moment. But I would like to review a broad overview of the facts in the light of the three-part test in Seifert. First, the point is on three points. Basically, first, the defendants have no purposely directed activities into Texas. They have made no solicitations and no marketing trips into Texas or to Texas. The defendants have mailed no marketing materials to Texas, and they have no website. The defendant's real estate agent did have a website, but under the Zippo case analysis, it is a passive website, and so it doesn't count as a, for minimum contacts purposes. The second point is that the defendants have not purposefully availed themselves of the privilege of doing business in Texas. I thought they went there to have meetings. No, Your Honor, they did not. Didn't they make threats to Mr. Matassaran? No, they did not, Your Honor. The allegation was that they were intimidating him, forcing him to go through with the contract, even without the specific property that had been omitted. Was that not true? That's not true, Your Honor. There were no threats made? No. I don't see any in the record. Well, you heard the argument this morning. Yes, it's simply not supported by the record. So there were no contacts, no physical visits by either of these defendants? No, Your Honor, not to Texas, and not with the plaintiff. And not what? Not with the plaintiff, and no physical visits by these defendants to Texas, and no physical visits of these defendants with the plaintiff. Well, there were allegations about misrepresentations by your client, fraud, and that was directed to a Texas resident, wasn't it? I mean, allegedly? With regard to fraud, Your Honor, the allegations are in three categories. Basically the defendant has alleged that there were numerous emails and faxes relayed to him in Texas by various agents, he says, and he says that those representations or those emails and faxes induced him to sign the contract. But he does not tell us, Your Honor, how those emails or faxes are inducements and how he was damaged by them. So they do not rise to the level of evidence of fraud because they're not pled with the particularity required by Rule 9b. And there's simply no color, there's no description of what these emails or faxes say. The second category that he refers to is post-judgment, I'm sorry, post-sale. He alleges that after the sale he discovered that there had been misuse of the funds of the HOA Corporation. That's not evidence of fraud in this case or misrepresentation because Mr. Matassarin does not have standing to bring that claim. That claim could only be brought by the HOA nonprofit corporation regarding mismanagement of its funds if in fact there were any. But again, he provides no evidence of what this mismanagement is. There's no disclosure of, no evidence of the bank accounts or checks or minutes of the meetings of HOA meetings. So we're given nothing. It's so vague that it doesn't rise to the level of prima facie evidence, Your Honor. The third category that he alleges that counsel addressed was a letter sent to Mr. Matassarin's counsel, Mrs. Matassarin's counsel in this case, and in that letter he alleges that there were statements made that were misrepresentations. But the issue there was Mr. Matassarin wanted two covered parking spaces. And in a defendant's attorney's letter to the plaintiff's attorney, the defendant's attorney says, no, you only get one covered parking space. You get another space, but it's uncovered and it's in the common area. This allegation of Mr. Matassarin is futile because he acknowledges in his declaration that he understood Mr. DeStefano's letter to say, I only get one parking space. And so he has essentially admitted and acknowledged that he knew what he was buying, which was one parking space covered, and he understood that. And in addition, I think it's important to note that the contract has a disclaimer paragraph, a standard merger clause, and I'm going to quote from that impertinent part. It says the buyer is purchasing property based solely upon buyer's inspection and judgment and not by reason of any representation made to the buyer by the seller unless expressly set forth in this agreement. So in that the plaintiff was represented by counsel and all of these issues were clearly addressed in the letter from the defendant's attorney in which the issue of condominium declarations, the effect of the condominium declarations, the fact that he only gets one covered parking space, all these are addressed in the letter to counsel. And I think that it simply doesn't rise to the level of a misrepresentation. If we look at the case of Moncton, if I may go back, Your Honor, to the minimum contacts assertion, the Moncton case, well, I'd first like to point out that the Burger King versus Roodsewitz case, a Supreme Court decision in 1985, was embodied by this court in its Stewart versus Spaveman decision. In that case, the court said an individual's contract with an out-of-state party alone cannot establish minimum contacts. And then this year in Walden versus Fiore, the Supreme Court held that the minimum contacts analysis looks to the contacts with the forum, not the individual. So I'll give an example. If the defendants had reached out into Texas and they had established a call center or cell condominiums, and that's how they had contacted the plaintiff, that would be a contact with the forum. Here, all of the, every one of the contacts which the plaintiff alleges are contacts with the plaintiff himself. And those are not contacts that are accounted for the minimum contacts analysis under specific personal jurisdiction. It's contacts with the forum. Well, there were communications, fraudulent allegedly, fraudulent communications sent into Texas. We don't know what those communications were. They've not been articulated as to what was fraudulent about them. Apparently, whatever you sent. And the plaintiff hasn't offered those into evidence. They've not been proffered. They've just, just the bald statement that it's fraudulent. If the plaintiff cries fraud, that does not, that does not satisfy the prima facie evidence requirement for establishing a tort. He has to do it with particularity as required by, as required by Rule 9B, and there's simply no particularity here. So the, in addition, the Walden v. Fiori Court says the plaintiff's, the plaintiff himself cannot be the only link between the defendant and the forum, and that's the only link we have here. So if the, if the, if we look at the Burger King Court's articulation of the philosophy behind personal jurisdiction, the, the court said that the contract is merely an intermediate step serving to tie up prior business negotiations with future consequences, which themselves are the real object of the transaction. And I think a real estate contract is the best and simplest example of what the Burger King Court is talking about, because there is, plaintiff and, and defendant sign a contract, but nothing happens, because it's the future consequences of that contract, the paying of the consideration and the passing of the title from the seller to the defendant that is the, are the future consequences, which are the real object. And that real object, those future consequences, those two transactions, the peppercorn for the property, took place in New Mexico, and we have the New Mexico escrow agent declaration stating that it was closed in New Mexico at the title company in New Mexico. And moreover, the plaintiff says in his declaration that he paid for the, for the transaction in Texas, but the, the HUD-1 settlement statement attached to the . . . Hasn't the plaintiff pleaded that, that he was defrauded by mail or by, by your client from, in Texas? I mean, he's pleaded, hasn't he pleaded an intentional tort upon himself in Texas by your client? He has pleaded that, Your Honor, but it does not constitute prima facie evidence of fraud. Under the Walden, under the Wyatt v. Kaplan case, the, the court held that, this court held that you have to look at the, the elements of the cause of action implicate what the minimum contacts are. In other words, the plaintiff has to put on prima facie evidence of his cause of action in order to withstand a motion to dismiss under Rule 12b-2. And here, there is, there is nothing in the, in the record that rises to the level of misrepresentation. The only piece of evidence which the, the plaintiff has provided is the letter from the attorney to his attorney. And that letter states nothing misrepresentational, nothing fraudulent. It, it just says you're only going to get one parking space that's covered, and you get another one that's uncovered. It says that based on the condominium declarations, that's all that any buyer at this time would be entitled to. And there's, there's nothing in this letter which constitutes an inducement. In, in fact, it, it says, you know, I hope you make the decision to purchase because it's up to you. The plaintiff could have withdrawn from the transaction at that time. You know, this, this is sort of like buying a lawsuit. The, the plaintiff says, I guess the, the best way to look at it, Your Honor, would be to say, if this letter had said you don't get, or you are, if the letter had said you are going to get two parking spaces, and then later the, the plaintiff has denied the second parking space, that would be fraudulent. Here the letter says you only get one, and he acknowledges that. And it also sets out clearly the defendant's attorney's interpretation of the condominium declarations. We haven't been provided by the plaintiff with any evidence that that's incorrect. So there's, there's no evidence in this record that there was any fraud in, in Texas. And, moreover, if we look at the, at the, at the, the, the third part of the test under Seifrith v. Helicopteros-Artuneros, that's the fairness and reasonableness test. If the plaintiff has established minimum contacts or a tort, then the court moves to an analysis of whether it would be fair and reasonable to assert jurisdiction over these foreign defendants in Texas. And there are five factors given by the Burger King Court for that analysis. First, would it be burdensome for these defendants to come from New Mexico to defend in Texas? Well, they don't have any business activities in Texas, and it would be burdensome. The, the second one is, does the forum state's interest, what is the forum state's interest in adjudicating the matter? Well, Texas courts have no interest in adjudicating the rights of parties under a New Mexico real estate contract in which the properties in New Mexico, New Mexico, the contract states that it's governed by New Mexico law and the plaintiff himself owns property in New Mexico. The third element of that test is whether the plaintiff's interest in securing relief. Here the plaintiff's spouse has filed suit in federal district court in Santa Fe on the same claims that are in this case and against the same defendants. So these two defendants here before this court are also defendants in a similar case in New Mexico as a defendant and another homeowner that doesn't agree with the, the plaintiff's view of these, these matters. So there, it can't be disputed that the plaintiff needs the Texas forum to adjudicate his dispute. Why? Because the plaintiff's attorney, his spouse, and the plaintiff have a complete identity of interest. They both are owners of this property. One month after the property was transferred to the plaintiff, the, Mr. Matasorin quit claimed a half interest to his wife, so now they're both owners. So now we have one owner filing suit in, in federal court in Santa Fe, New Mexico, and the other owner filing suit in Texas on the same issues. So the plaintiff doesn't need the, the Texas forum and that brings us to the element of the interstate judicial system's interest in efficient administration of justice. Well, as I've just articulated, the, there's no efficiency in having a Texas case and a New Mexico case on the same matter and the Texas case is, is unnecessary. And in that the witnesses, except for the plaintiff, all the witnesses are in New Mexico. The two real estate agents, one for the plaintiff, one for the defendant, are in New Mexico. The title company is in New Mexico. The documents are in New Mexico. The defendant's attorney who will be a witness is in New Mexico. And then the, the final, the final fairness and reasonableness test is whether there's a shared interest of the several states in, in furthering a fundamental social policy. I see no fundamental social policy that is advanced by a suit in Texas. So looking at all of those, all of those factors, it would be unfair and unreasonable to assert jurisdiction over these defendants in Texas. And I think, you know, since the court's questions have focused on, on whether or not there's a tort, I think the court has to view that through the lens of Wyatt versus Kaplan and, and look at whether or not there is evidence of a tort. And the, and there simply is no evidence that has been proffered by the plaintiff of tortious conduct. The, the, the pleading is so vague and there's no documentary evidence provided that there was some, something misrepresented. And the, and this court has, has upheld in, in the Moncton case that the plaintiff's own contacts with the former . . . I mean, one of the, one of the points that the plaintiff made was that he sent the dues from Texas to New Mexico and then he claims the dues were mismanaged. Well, again, that's a claim that only the HOA Corporation can bring. But the Moncton court, a decision last month by this court states that the plaintiff's own contacts with the forum cannot be counted as minimum contacts against the defendant. And so when the plaintiff says, I sent my funds from Texas, well, that's, that's just his own contact with Texas. And, and just, just to be clear, there's, there's no record, or there's no evidence of any intimidation. There's no evidence of any direct contact between the defendants and the plaintiffs. The only, the only thing that the plaintiffs have, have proffered is the, the letter of the defendant's attorney, which invites the plaintiff's attorney, if you wish to discuss this further, please do not hesitate to contact me. All of these declarations of the Condominium Association are in the public record, in the Taos County Public Registry. They have public notice of them. They've not been shown to, to, they haven't proffered any reason as to why those declarations are misrepresentational. Thank you. Ms. Matassaran, Ms. Matassaran. First and foremost, I want to stress that the plaintiff was not in a position to obtain evidence. This, this case was removed to the Federal District Court in the Western District in San Antonio. Mr. Matassaran filed a motion for remand. Within a 30-day period, he was challenging the court's jurist, continued jurisdiction of the case. Generally in federal court, you may not ask the court, you may not ask for any affirmative action in the court without acquiescing in the court's jurisdiction. And what the defendants have repeatedly stated is, well, you didn't get evidence of this. Well, there is no evidence of that. Well, you need evidence. It appears from the magistrate's evaluation that she, and subsequently the court who adopted her analysis, is that they required from the plaintiff a level of evidence which would be expected after, in a motion for summary judgment, or even in a motion to dismiss under Rule 12b, you generally are given the opportunity before dismissal to replead your case. Sometimes the court will order you to do so. They don't just take a bad federal pleading and dismiss a cause of action. Well, again, in this particular instance, you're challenging the jurisdiction for anything to be going on there, so we weren't in a position to provide evidence. And I think what the case law requires is a prima facie showing of what we're arguing versus specific evidence, a case, a prima facie case. How would you prove the fraud in the inducement claims? I would take people's depositions and obtain... What facts are you relying on now? The facts we're relying on now are specific documentation discovered after this in the... You mean that you haven't discovered yet? No, yes, we have. It's in the Taos County records, and that's part of the Santa Fe lawsuit. The defendants have also filed a lawsuit in Taos County against 15 people, all of the owners of a portion of this condominium. When you made these claims that were being considered by the magistrate, what evidence, what facts were you relying on to make a fraudulent inducement claim? Facts as asserted in the complaint, which is that they told us specifically that they were comported with the New Mexico Condominium Act, which they did not. In one particular instance, there was a failure, which we found out, that there was a perpetual exclusive easement to the second carport filed by a companion company of Mr. DeStefano's called Paradisio. And this is a perpetual easement meant never to expire, which gave Unit 8A, the unit George Matassorin bought, exclusive use of this particular carport into perpetuity. That was never mentioned. And we believe, we haven't completed discovery in New Mexico yet, but that Mr. DeStefano is the one that drafted the amendment. I mean, which included this particular perpetual exclusive easement, meant never to expire. So there's two law firms in Albuquerque that are involved in the Towles County litigation. I think that they keep asserting that I have exactly the same interest as George Matassorin in pursuing a cause of action in Kamal County. Not so, I'm not obligated for one penny of the mortgage on the condominium in Towles County. Didn't sign the documents, wasn't required to qualify. He is solely obligated under that. And I think that their admission that under New Mexico law, there's this disclaimer of anything that went wrong or anything that was misrepresented in a real estate transaction. That's not the case in Texas. If you make an express misrepresentation in connection with a real estate transaction that's subsequently found to be fraudulent, you are obligated to pay damages.  It's completely different from any assertion that it'll be taken care of in New Mexico. I believe my time's up. Thank you, ma'am. That concludes our orally argued cases today. I think these cases and all others filed before this panel, under advisement, and the court will adjourn, subject to.